Good morning. Have a seat, everyone. Could we please call the first case? 14-2950. Here, this is No. Will the attorneys presenting argument please step forward and I'll call the first case. Good morning. We typically allocate 15 minutes per side. We can be a little flexible depending on how this shakes out. Mr. McHenry, would you like to reserve a few minutes for rebuttal? Two minutes. Okay, that'll be fine. Thank you. Okay, thank you. And Mr. McHenry, whenever you're ready. Sure. May it please the court. There are two issues on review today. The first being the state's failure to present sufficient evidence of the elements of the offense that they charged. And the second is that the imposition of 2012 SORA against my client is a violation of the prohibition against ex post facto. Punishments. We believe that the case should be decided on the first issue. However, I'd also like to discuss briefly at the end the second issue because there have been some recent changes in the case law that should be addressed. Turning to the first issue, the state failed to prove up basically the offense that it charged. It charged my client with a violation of subsection 3A1 of SORA, which imposes a duty basically for the sex offender to register in a municipality that he or she has a right to either resides or is a temporary domiciled in for three or more days. So the fact of residency and domicile was an element of the offense charged. In this case, the only evidence presented was that the client was released from prison in July of 2012. In June of the next year, Mr. Gomez is arrested. And during the course of that arrest, he makes a statement to the detective saying that he had attempted to register at an address that is a Chicago address. So basically based on the facts, what we know is that he was released from prison and at least on one day he was found in Chicago and he attempted to register. And looking at the sufficiency of the evidence, can't we in that light infer that because he listed his address in Chicago and he couldn't register and he's still not registered, looking at this evidence in the light most favorable to the state, can't we say that we can presume that it's a Chicago address where he's been residing? No, Your Honor. I mean, basically to do so would mean, you know, by saying that you attempted to do the right thing, you went to the police and said, I want to live at this address and they say, well, it's too close to a school, you can't, you know, then you're not allowed to. So that's, you know, that fact I would say suggests that he was not able to live in Chicago and it's certainly not evidence that he was able to live there. He tried to do the right thing and was said, no, you can't do that. Well, he was doing the wrong thing when he tried to do the right thing. He knew he couldn't live next door to a school. I mean, whether he subjectively knew, you know, that he could or not, I mean, he was, when he was convicted, SOAR had no requirements in 1993 that had anything to do with school zones or parks or playgrounds or daycares, any of that. So all this is certainly, wouldn't have been privy to him at the time that he committed his offense. Now, whether he subjectively knew at the time, I mean, he went to the police, tried to register there and they said, no, you can't, it's too close to a school. And, you know, he was arrested in Chicago. So all we know is that he wanted to live in Chicago and was found there on one day. This is no different than any constructive possession case where the state has to prove up, you know, that, you know, you were found in a residence, arrested, where there was drugs, but they have to prove a connection between you and the drugs. So what they do is they bring in, you know, here's a bill, here's a utility bill, a phone bill, something showing your address so we can now infer, yes, you do reside there, you'd know what was in the house. This is no different. It's an element of the offense. They just presented no information that he actually resided or was domiciled in Chicago for three days. Well, what do we make of the fact that he has never registered at any address since his release from prison? That's a violation of the law, isn't it? Yeah, what I make of that fact is that the state should have charged a different offense. I mean, basically, under Fuqua v. Harris, when you charge a specific subsection, you know, a specific offense under SOAR, you're required to actually prove up that offense. It's irrelevant whether or not the state could have charged you with a different offense and successfully prosecuted you. So in that case, you know, what the state should have done is charge this case differently. They didn't do that, and so, you know, basically to allow them on appeal to try to re-litigate the case, you know, that would certainly go against, you know, any precedent in that area. And in fact, Fuqua v. Harris is quite clear on that point. You know, in this case, they did specifically allege a violation of that subsection. This is different from cases where the state fails to do so, and they just generally say you violated SOAR. So based on those reasons, there's just no getting away from the fact that the state didn't prove up the case that it actually charged. If there are no further questions as to that issue, I'd like to turn the remainder of my time to the second issue, because there have been significant changes since the opening brief has been filed in this case. Basically, the application of the 2012 SOAR to Mr. Gomez is a violation of the Prohibition Against Ex Post Facto Punishment. Since 1993, if you just compare the SOAR that was in existence at the time that Mr. Gomez committed his offense, compare that to the 2012 version which is being imposed against him now, they're virtually irreconcilable. In 1993, it's simply saying you get to a community, you've got 30 days to register. If you fail to do so, it's a class A misdemeanor. Compare that to present day, you know, what is now imposed under SOAR. It's basically akin to, you know, the Michigan statute that has just been in the Sixth Circuit. In Doe v. Snyder, recently in 2016, they have held the Michigan SOAR statute, which is similar in many respects to Illinois' SOAR, a violence ex post facto, and it does so because going through the Mendoza-Martinez factors, five of them that are most relevant to these cases, I mean, one, the Sixth Circuit said that when you basically restrict where somebody can live, where they can work, where they can lawyer, you're now, you've gone from just a, you know, a civil sort of requirement to protect the public, now you're starting to go to, you know, basically fundamentally imposing restrictions on a sex offender's rights. So in doing so, it's really akin to banishment. That's what the Sixth Circuit held. It's also similar to shaming a defendant. Their scheme, which is... Let's go back. So now it's shaming the defendant to require a sex offender to register so we know where they live. You're saying that that's banishment and shaming. I'm not saying that it's just the, it's just the requirement to register. You don't think a neighbor should know that the guy next to them has been convicted of a sex offense with children? We're not saying that. Well, banishment and shaming sure sounds like that. Well, if I can explain what I'm saying is that when you're restricting and the legislature says you can't live, and certainly in Chicago is a good example of how onerous this can be. In an urban environment, if you can't live within 500 feet of any school, any park, and you can't be within 500 feet of a playground, a daycare, anything that provides services to children, what you're doing is you're saying basically on this area, you can't live, reside, or work in almost all of the community irrespective of whether or not you pose a current risk to the community. There's no way for Noah Gomez to come into anybody and say, listen, I did this in 1993. It was a terrible thing. Look what I've done since then. The only criminal activity on my behalf since then is the failure to require in 2000 and 2010 to these ever increasingly onerous registration requirements. So we're not saying that just a mere act of asking someone to register, which is what in 1993 he was required to do, we are certainly not saying that that is shaming or anything. We're not disputing that that was a legitimate exercise of the legislature, of their desire to protect the public. However, once you impose all these other regulations, which is really what the Sixth Circuit focused on primarily under the rationale that we're protecting the public, you've now gone too far. It's all these other requirements, not just that you have to register, but where you can live and what you can do with your life based on no showing that you're a current risk to the public, that that does become akin to what they call the banishment, shaming. They're not saying it's the exact same thing, but they're saying it's remarkably close. And then also the Sixth Circuit importantly addressed the belief that you are, that it is reasonable to protect the public and that these regulations actually help to do so. They cited numerous secondary authorities and studies in this area that basically say now that connection is tenuous at best. There's some studies that say that actually the rate of recidivism is actually lower for There's also studies showing that the more that you try to impose and the more that you make it difficult for somebody to re-acclimate into a community by barring where they can live, where they can work, where they can lawyer, you make it harder for them to re-acclimate. You actually make it more likely that they're going to re-offend. So the connection, I mean, it's always been with good intentions that the legislature has passed these laws and we're not challenging that somebody doesn't have a sincere belief that they are protecting the public. We're just saying that the more and more information is developing in that area, the more it's clear that this has become punishment. So we're not saying that this is straight out, you know, this is not a case where we're challenging that this is cruel and unusual. We're just saying this is punishment. It wasn't in 1993. It is now. So in recognizing that fact, that has implications, right? It cannot be applied to Noah Gomez without violating the prohibitions. So where does something cross the line from protecting children to punishing the offender? I mean, you're not suggesting that the legislature intended to punish. I don't think Dover or Snyder did either, right? You're just saying it becomes that at some point. I mean, if the legislature makes decisions about how to protect the public, that's part of their police power. And if they've made the decision that in this changing world, our world has changed, we have Internet now we didn't used to. In 1993, we didn't have the Internet. Any, you know, as things come up, as they learn of new offenses, they learn of some child being preyed upon in a park. So they say, okay, now we're going to pass a law saying sex offenders can't go near a park. Then they hear that a sex offender addressed up as a Santa Claus or a clown or something. And they say, okay, no, we're not going to allow that either. They are, in each case, aren't they just reacting to a, and maybe they didn't have that instance. Maybe some legislator just came up with it in their head. But these are all situations where you can envision a child being present, a vulnerable child, and there's a desire to protect the public. I mean, where do we, where is that bridge? How do we know where that bridge is, where it becomes punishment and therefore an ex post facto law? That's the beauty of the Mendoza-Martinez analysis is that in that analysis, once you conclude that, as we do, we conclude that and agree that the underlying intentions of the legislature was not to punish. I don't believe that that was the intention of the legislature. I don't agree. But that's not the analysis. That's just the first question. The second is, even with good intentions, we need to now look at these factors and say, has it imposed affirmative disabilities and restraints on sex offenders? And go through all the steps. Is it excessive and all these things? And if you go through Sixth Circuit's analysis, which this court in Cooper v. Parker in 2016 has already said is a persuasive and thorough analysis of a statute that resembles Illinois SOAR considerably. So it's come to a point now where the law is evolving, and I think that Illinois needs to really take seriously that we can't just look back to Illinois Supreme Court cases that go back to the late 90s and early 2000s and say, well, Malchow said that registration was okay at that time. There have been considerable changes and burdens that have been imposed on all sex offenders. And I would say, and also in answer to your question, one key component that the Sixth Circuit talked about too is that there is no means for a sex offender to come in to any judicial body or otherwise and say, I want to be reevaluated and assessed whether I'm a present risk. And that's, I would say, a key component to whether something has become, now we have all these burdens, but if there's no means to show that, you know, I'm not somebody that should be subjected to this, then I would say that does indicate that you are sort of crossing that line. For these reasons, we would ask this court to reverse. Thank you. Mr. McHenry, thank you very much. You'll have some time for rebuttal. Ms. Boland? Thank you. Good morning. Good morning. Did the State drop the ball on this one? Well, I don't think the State dropped the ball. Here's what I think. The defendant cites Harris and Robinson. Those are the major cases that the defendant cites. But what the defendant is losing sight of is the fact that there's a number of different ways to have a violation of SORA. The two most common that we see are a Section 3 violation, which is what is charged here, which is you came out, you had to register within a certain period of time, you didn't register within that period of time, there's no registration for you. The other type of registration violation that's very commonly seen are the Section 6 violations, and that is you did register an address, and then you moved and went and stayed with a girlfriend or somebody else, and that's really the address that you're at, and that's the whole point of SORA. If you don't have these individuals registering an address, either at all or the one that they're at, then it undermines the whole function of the law enforcement monitoring. So when the defendant cites Harris and Robinson, those are Section 6 cases. And if you look at Robinson, Robinson was an individual who had registered a Crestwood address out in Aurora, I think it was. He then spent time working in Iowa. So the police try to go and verify his address out in Aurora, and he's not there. And his dad is there, and his dad says he hasn't lived here since August. And so the police then go forward and charge this individual with changing his address and moving to another place out in Iowa or wherever it was. The problem is that the defendant himself told the police, no, no, I live at the Crestwood address. I just work in Iowa a couple days a week, but I'm always back within that three days. His sister testified, nope, he lives at the Crestwood address. And his dad, who initially had given the police the information that he didn't live there anymore, said, I get mixed up easily, and I don't remember talking to the police. That was the sum total of evidence in Robinson that suggested that he had moved to the girlfriend. The problem for the police was when you do a Section 6 prosecution, you have to prove a baseline address because you've got that registration. Then you have to prove that he moved somewhere. And unfortunately, the police relied on, I think, the dad's statement initially, and then the dad basically recanted. But don't both Section 6 and Section 3 rely on the definition of place of residence or temporary domicile? Yeah, yeah, they are the same. And Robinson interpreted that, and Robinson said that that means a specific location. So if we, do you agree with that? Yeah, yeah, that's what Robinson says. So do you agree with what Robinson said? Well, I agree with him for a Section 6 that you have to establish that specific location because otherwise you do have a valid registration, you do have an address. So how do you establish that second element? Okay, but Section 3 also talks about you have to register in the municipality in which you reside or are temporarily domiciled. Same definition as Robinson construed. So doesn't that mean for a Section 3A1 violation you have to prove a specific location where the defendant resided? So what we have to prove is that he comes out, that he is subject to the Illinois SOAR, yes. That he is a sex offender, yes. We have all of that here. That he has an address, that he, in this case he admitted to Detective Lunsford that he had an address. He tried to register his address, but it was an invalid address, so they wouldn't accept his registration. That is what we have. That corroborates the fact that he was found in Illinois, he was arrested on an unrelated... And what was the specific location he resided at? The Spalding location. It was 5435 South Spalding. What he said to Detective Lunsford was, I tried to register my address. Yes. He didn't say, I want to live there, I'd like to live there if I'm not close to a school. He said, I tried to register my address, but the police said it's too close to a school. Right. So they wouldn't take it. And what did he do after that? He was still in Chicago because he was arrested in Chicago almost a year later. And how do we know that he was residing in Chicago? Well, we have absolutely no other evidence except the reasonable inference that when you come out in Chicago, when you tell the police that you live on Spalding in Chicago, and when you're then arrested almost a year later in Chicago for your third failure to register, that you have, in fact, been living exactly where you told the police you've been living. You just haven't been able to register that address. There is nothing else in this record that suggests... But he didn't say he had been living there. He said he tried to register. He said, I tried to register my address. Correct. Okay. And he was denied it. How do we know that when he was denied he didn't say, well, I guess I have to figure out some other place to live? Because his excuse... How can we jump the... I see what you're saying. How can we get to the point where we find that he lived in that address for three days? Because that's the evidence that we have. We have the evidence that he came back to Chicago, that he tried to register his address in Chicago, that almost a year later he was arrested in Chicago on a different offense. And then when he talked to Detective Lunsford, his excuse not was, I live in Iowa, or I moved with my girlfriend, or some other, I don't live here anymore, none of those things. He thought his excuse was, hey, I tried to register this address, and the police wouldn't take it because it's too close to a school. But there was no admission that he was still currently residing there. There was no admission regarding where the residence he was at all. But we don't have to prove that. We have to prove that he has an address, that he had three days to register that address, and that he's otherwise eligible to register, and he was noncompliant. All of those things we proved. That is all we have to prove. You charged him with a specific offense. You allege that he was living in Chicago, and there's absolutely no evidence that he was living in Chicago at the relevant time period. Well, the relevant time period is any time after three days of his release from the Robinson Correctional Center. Well, where did he live? So the proof is, we're entitled. You cannot use as a mere corpus the same thing. Where did he live? Right. And I agree with that. You cannot prove solely by the defendant's confession that element. But where that confession tends to. That's a statement. I wouldn't say that's a confession. Well, it's a statement. So corpus electi, we can't just rely on his statement. I think that's part of the problem that occurred in Harris. We had some additional information. That, again, was a Section 6 case. We had additional information, but the foundation wasn't laid for that, and so all we ended up with was the defendant's admission. That's all we had. Here we have more than that. We have, and remember, the Section 6 requires us to show the move to a new address. Not just that you registered an address and that's your address, but that there's a second element that you have to show for Section 6. But in Robinson, they overturned the conviction because they said they did not establish beyond a reasonable doubt the specific location to which they'd moved. Right. This is granted not the same thing, but it's the same principle. What the defendants are arguing here is you didn't prove the specific location at which you resided. No, it's not the same principle. In a Section 3 principle, in a Section 3 case, you have a duty to register. You fail in that duty to register. We can charge you anywhere in the state of Illinois if we show that you are required to register in the state of Illinois. And in this case, we also show that he admitted he had an address, and that address was not an address that he could register. That was his claim. But nonetheless, he had an address. He was also arrested back in Chicago. All of those things are relevant evidence, and all of those things go to the Prosecutor's Office. The fact that he was arrested in Chicago proves he resides in Chicago? Well, it's certainly evidence that tends to support his admission that his address was in the 1500 block of South 4th. What you're calling an admission, what we're calling a statement, was a year before he was arrested, and somehow we're supposed to just go on with it altogether and say that's sufficient? That's what the sufficiency of the evidence is. You take the totality of the circumstances. I know what the sufficiency of the evidence is. That's what I'm saying. I'm seeing it here. Well, you know, it's because I think the case law that we see is the Section 6 case law. You're looking at Harris. You're looking at Robinson. Those are a different type of prosecution. So you're also saying this is a strict liability offense. He was supposed to register within three days. He didn't register within three days. We're picking him up somewhere in Illinois, and that's enough. Actually, Dennis Molner, which is an Illinois Supreme Court case, says that exact point. It is a strict liability offense for failure to register. Now, there's the failure to change your address. There's the knowing failure of other violations. But that particular – That is a charge, but you charged something different. You said he lived in Chicago when he failed to register. So you have to prove that he lived in Chicago. Right, and so our evidence that he lived in Chicago is his admission that he had an address in Chicago. That's it. It's uncontroverted. That is exactly what he admitted to, and that is sufficient. Is that exactly what he admitted to? I thought he admitted that he tried to register. His address. That address. Not that address. Not a address. Not an address I'd like to stay at. His address. And that's the only evidence is that the year-ago statement that I tried to register at this address, and that's the proof. Not this address. His address. That's the proof that sustains this conviction. That's the proof that sustains that element of the conviction. Because think about it now. A person comes out, and the whole point of SORA is so that law enforcement can figure out who is presenting the risk in a community. You duck. You hide. You don't register. And you're hoping that police don't catch you on something else, and if they do, you just sit silently, and now the police are like, well, I've got a noncompliant sex offender here. He's admitted that he lives at this address or that he tried to register his address, and we wouldn't take that registration, so we have to throw that out. We have to follow him for days to determine whether he's at that address. If we want to charge him. But just ask him where he lives. Wouldn't that have been simpler? That's exactly what we have to do. Or ask him where he's registered or charge him with the other offense. A Section 6 offense is a, requires additional elements, and a Section 3 offense simply says, if you don't register anywhere in Illinois, you certainly didn't register in the municipality in which you said your address is, which is Chicago. That is all we have to prove for Section 3. It's a fairly simple offense, and this individual has committed this offense, I think, three different times. We've got three different failures to register. If you know the answer to this, it's not exactly this case, but what does the police do if they find somebody, and the person is a sex offender, they fingerprint them or whatever, and so they're sure it's a personal sex offender, but he's not talking. He hasn't registered, and he won't tell them where he lives. Is there anything you can charge a sex offender with in that situation? Well, it depends on the circumstances of the arrest. Perhaps in the circumstances of the arrest, he has his license with him. That might be independent, some evidence that he has an address, that he lives at that address, because that's what you would have to say. But you might be able to, like in Robinson, they went to the house. They wanted to verify, did he still live here? This is the address that he registered. The dad said, oh, he hasn't been here since August. So now they're trying to get information that he's moved, that he's not there. I understand. I guess what I'm asking is, if you don't know, as the police, as the prosecutors, if you don't know where this person lives, but you know they're a sex offender, and you know they haven't registered, you can prove that. You can prove the lack of registration, because you can do a search, right? Is there anything you can charge him with? I believe it's a Section 3 violation where he is admitting that he has an Illinois address, because he admits... But if he doesn't, he remains completely silent. Is there relief under the statute in that situation? I think that, I don't know that there is relief under the statute. There has to be something. There has to be either his statement, there has to be some evidence, there has to be something. And, you know, police may take additional steps to try to determine where this person is. I think here, this is what we had. And in many of these Section 3 type cases, this is what we're going to have. Because these individuals do not want to register, they do not want to be found, and so they're not going to just show their information. Sometimes we can get it through a search, maybe a telephone, subscriber record. You know, we try to use whatever it is that we have available to us. Are they required to register even if they move out of the state of Illinois? There are requirements for them to notify the state that they're registering in another state. There are provisions in the statute which are not at issue here, but there are provisions to provide notice. So if there's no registration, there is a charge you can bring if there's no registration at all. And it's a Section 3 charge. And only if he's silent, completely silent. It's a Section 3 charge. That's the charge that we bring. Section 3 and Section 10. Section 10 is the penalty provision. It's just a straight-out penalty provision. Well, you don't… Section 3 is the penalty provision. So if he's arrested in Evanston, you can bring it and there's no registration. You can bring a charge without saying he lived in the city of Chicago. You can just say he wasn't registered. His duty is to register with a local municipality. And the point is, if you don't register anywhere in Illinois, you have by definition not registered with the address that you said you wanted to register or that was your address. So by definition, you are not registering in Chicago or Evanston or anywhere else. There is a Section 10 provision that says he can be tried and charged in any county where he can be found because we've had sex offenders that move from Chicago to another place and say, oh, my violation was in Chicago, you can't charge me in Downing Alton. So we had to see a change to the statute for that. What about Gary, Indiana? Gary, Indiana? Indiana has its own registration requirements. He would have to comply with those. And the thing is, there is a notice provision that comes back to Illinois to show that he is compliant in Indiana if he moves. So every state has its own registry, and every state's registry is a little different. And Illinois basically has your Section 3 and Section 6. Now in Mark Minnis, nobody cited Mark Minnis to this court because it's not a First Amendment case, it's not an issue of the Internet. But in that case, the court also upheld Osorio because the violation there was the failure to register his Facebook pages. So there are other types of violations with other types of proof. And my point in Section 3 is you had to register, you didn't register anywhere in Illinois, the database says you had to register, you admitted you have an Illinois address, you have committed a violation of SORA. It's not a Section 6 case. Let me move to the constitutionality just for a few minutes. We don't operate on a blank slate when we are looking at the constitutionality of SORA. We have very recent case law. We have NRAC from this court in 2016 refusing to find that the social changes manifest any kind of punitive intent. There the issue was disproportionate penalty, but first the court had to find it was a penalty, and the court said no. It's not a penalty, and that was for lifetime registration of that juvenile. In Avila Brioni's empowered in Parker, and I cited Parker as additional authority to this court, and also Bingham as additional authority, and I'll get to that in a minute. In all three of those cases, the defendant tried to make a claim that the Illinois SORA had become a punishment. Avila Brioni's was the 2012 version, exactly the same version challenged here. Avila Brioni said we don't need to reach the constitutional question because even if it has some punitive portions, it is still consistent with the goals of the statute itself. Powered and Parker did the same, found the same, both of them rejecting the proportionate penalties and eighth amendment challenges, again requiring the court to find that it was punishment. So why do we have these determinations by these courts? Well, as recently as 2013 in Cardona, the Illinois Supreme Court said, and I quote, it is worth repeating that sex offender registration is not punishment. That's 2013. That's not an old case. That's a 2013 case. Konetsky, 2009, the same, J.W. in 2003, and I pointed out in J.W. in 2003, that was lifetime registration for a juvenile. I think that was three years before this petition off the registry, the section 35 of SORA was enacted. That allows a juvenile offender adjudicated as a juvenile to file a petition two years for a misdemeanor, five years for a felony, to seek to get off the registry. But in 2003, three years earlier, the Supreme Court still held it was not punitive for lifetime registration of a juvenile. So we have a lot of case law in Illinois. The defendant in his opening brief basically says Adams has no relevance. Adams is one of the first cases deciding the precursor statute because it did not present a detailed analysis. So he attacks Adams for that reason. He attacks Nalschild because it didn't provide an analysis, and now it's been misread by all the later courts. He complains that Konetsky involving a reclassification of a juvenile sex offender to a sexual predator, again, requiring lifetime registration, the court in Konetsky said that does not make the statute punitive. But the defendant complains that Konetsky did not conduct a meaningful enough analysis. And then finally, I cited in my brief the Fredericks case. Fredericks is exactly on point. Fredericks was a case that involved an individual who had a registrable offense. He then went off the registry, and then he committed an additional felony, which triggered him back onto the registry. And in that case, the court did go through the Mendoza-Martinez factors and found that the sex offender status was not excessive because of the additional recidivism. That's certainly what we have here. We have constant recidivism every few years, felony recidivism. Bingham also followed Fredericks. Bingham is another case that I cited as additional authority. In that case, he didn't have to register for his 1983 sex offense. Then he committed a felony theft in 2014, and he did have to register. There's still no ex post facto violation because the new felony shows the continued tendency towards recidivism, and that's exactly one of the things that SORA has been held to be a regulatory status civil regulation. Now, defendant asks me to consider Snyder. Snyder, as the defendant points out, is a Sixth Circuit 2016 case that construes the Michigan statute. Michigan is considerably different than Illinois. It's different on its facts. For instance, in Michigan in 2011, Michigan added a tier system, and the Snyder case found that Michigan had a present view of dangerousness in the tier system by classification of the offense but didn't do any kind of risk assessment, and the court in Snyder found that if you're going to put that in, you have to do an additional risk assessment. Well, Illinois doesn't have that. Illinois has just a categorical system. It's got no tier system. And that issue has already gone up to the United States Supreme Court in Connecticut versus Doe and has been upheld and has been cited by later Illinois Supreme Court cases. So the system in Michigan is very different than the system here. The system here, we have separate statutes regarding parks and playgrounds and residency. Those are criminal statutes. Those have not been challenged here. Michigan actually folds that all into their Sex Offenders Registration Act. So as part of that is this loitering within school zones, again, with its own penalty structure, and the court is finding we're moving into the punitive setting. Here we don't have that at all. What we do have is 150 section 8, which does put the sex offender on notice of these different provisions, but they're actually different criminal provisions. Ms. Brolin. Yes, I'm sorry. So there are a number of things that I have looked at in terms of the Michigan statute, and the Michigan statute simply doesn't allow us to ignore all the Illinois precedent. So we would ask this court to affirm the defendant's conviction and the section 3 violation and also the constitutionality of their Sex Offender Registration Act. Thank you very much, Ms. Brolin. Mr. McHenry. Yes, sir. I'll be very brief. With respect to the first issue, just to dispel, there is no such thing as just a section 3 violation. The state is now attempting to basically retry the defendant on appeal by saying, well, since it's a section 3 violation, we can then, you know, if there's any evidence for any subsection in section 3, then we win. You know, you're guilty of the offense. That's just not true. That would be like saying that under the AUUW statute, right, any of those subsections, it doesn't matter what the state proves up as long as they have evidence of something, even if they chose to charge you with one specific subsection. Here they chose just to charge one specific subsection and they failed, and now they're reaching to other subsections that say you had a duty from the time you were released from prison, you had three days to register. That's true on your separate subsection. That's a separate offense. They were more than welcome to bring that charge to trial. Is that offense tied to a municipality? I don't believe that it is, but I'm not 100% certain on that. So what is the police supposed to do in a situation like this? If they come upon a man, they arrest him. I don't even know why he was arrested. I don't think the record discloses why he was arrested initially, but he's brought into custody for something. You determine he's a sex offender. He won't tell you anything. You can't figure it out. Maybe you try to do an investigation, but you come up blank. You have no idea where he lives. He won't tell you. Can you charge him with anything? In this case, I don't know if it's exactly that, because in this case, I believe it would be within their knowledge to know when he was released from prison. So I think what they should have done is what they're trying to do on appeal now, which is say you were released on this date, you had three days to register. We looked at the database, you didn't register. I think that's cut and done. They didn't do that. So, you know, in this case, they just simply didn't prove up the offense that they charged. For those reasons, we ask you to reverse. Thank you. Thank you. Thank you very much, counsel. This is a very interesting case. It was very well briefed and very well argued. We will take it under advisement. Thank you.